# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MICHAEL RICE,                                    Civil Action No. 1:05-cv-779
       Petitioner,

                                             Spiegel, J.
    vs.                                          Black, M.J.

ERNIE MOORE, WARDEN,                             **REPORT AND**
       Respondent.                           **RECOMMENDATION**

      Petitioner, a state prisoner, brings this case pro se seeking a Writ of Habeas Corpus pursuant

to 28 U.S.C. § 2254. The case is now before the Court upon the petition (Doc. 1), respondent's

return of writ and exhibits thereto (Doc. 6), and petitioner's reply to the return of writ. (Doc. 9).

## I.      PROCEDURAL HISTORY

      This case involves the following facts, as summarized by the Twelfth District Ohio Court of

Appeals:[1]

> {¶ 2} On March 9, 2002, Brenda Duncan ("Duncan"), a bartender at the Towne Pub
> in Hamilton, Ohio, observed an argument between Toni Upton ("Upton") and
> appellant. Upton and appellant were frequent patrons of the Towne Pub. Upton and
> appellant were dating. Upton had also been living with appellant and his mother for
> several months. However, Upton removed her belongings from appellant's trailer the
> previous day.

> {¶ 3} The argument at the Towne Pub ensued over Upton telling appellant that "it
> was over," and that she was moving out. Duncan asked Upton and appellant to
> separate so their arguing would not disturb the other Towne Pub patrons. Upton and
> appellant complied, however, sometime later Upton and appellant were arguing
> again. Upton again told appellant, "no, it's over," and "we can't keep doing this."
> Later in the evening, Upton and appellant seemed to be reconciling and, sometime
> between 8:00 and 9:00 p.m., Upton and appellant left the Towne Pub together.

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence
of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94
(6th Cir. 2004).

{¶ 4} Appellant returned to the Towne Pub at approximately 10:50 p.m. by himself. Other patrons in the Towne Pub noticed that appellant was wearing a black leather vest and white tennis shoes that he had not been wearing earlier. Appellant also appeared to be "cleaned up" as if he had just taken a shower. Appellant stayed at the Towne Pub until 12:30 a.m. when he left to catch a cab at the Classic Rock Café.

{¶ 5} Taxi driver James Lipps ("Lipps") testified that he was familiar with appellant because he would use his taxi service "at least twice or three times a week." Lipps testified that when he picked up appellant on March 10, 2002 he asked him "the same thing I always ask him, * * * how he and his old lady were getting along." Appellant replied that "he don't really know. He just got back from Michigan on a fishing trip." Appellant stated that "he went straight to the bar" from his fishing trip. When Lipps and appellant arrived at appellant's residence, appellant stated, "the bitch ain't here."

{¶ 6} On March 10, 2002, Upton's body was found slumped over on the driver's side of her vehicle. Upton had been stabbed five times in the chest. The coroner determined that the cause of death was a stab wound inflicted just below her collarbone, which resulted in the partial laceration of a major artery. A knife "consistent with the murder weapon" was found in Upton's hand, however, there were no identifiable prints on the knife.

{¶ 7} After Upton's death was discovered, Hamilton police proceeded to interview people who knew the victim. Appellant was interviewed and he stated that he was with Upton at the Towne Pub on March 9, 2002. He stated that he stayed at the bar all evening with Upton. When he got Upton to leave with him that night, he realized she was drunk. He told her she should take a cab. She got mad at him and threw him out of the car. He went back to the Towne Pub where he called a cab and asked to be picked up at the Classic Rock Café. When he went back outside to walk to the Classic Rock Café, he saw Upton in her car pulling out of the parking lot with an unknown male in the passenger seat.

{¶ 8} Hamilton Police interviewed Jeff Skinner. He informed the police that on March 8, 2002, he was drinking with appellant at the Wagon Wheel bar in New Miami. Skinner asked appellant where Upton was and appellant replied, "it don't matter because as soon as I find the bitch, I'm going to kill her."

{¶ 9} Hamilton Police interviewed Lisa Hyde ("Hyde"). She informed the police that she had a conversation with appellant at the Towne Pub in January 2002. Appellant pulled out a knife and told Hyde that he "didn't have a problem with cutting anyone that fucked with him." When Hyde asked appellant where Upton was, appellant replied that when he found her he would "cut her fucking head off."

{¶ 10} Hamilton police questioned appellant again. Due to inconsistencies in

2

appellant's story, he was considered a suspect and he was read his *Miranda* rights. Appellant then modified his former statement. In his second statement, appellant told police that he and Upton left the Towne Pub and went to his residence so she could collect some of her belongings. He changed his clothes and combed his hair. He and Upton returned to the Towne Pub and they had an argument in her car. Upton accused him of cheating and hit him with her fists. He then hit her in the side of the head with his hand. She "got very mad" and pulled out a knife, waved it in his face and tried to stab him. He grabbed her hand and pushed it down to keep the knife away from him. The knife could have possibly cut her at that time. However, he did not think she was injured. He then left her car, went back to the Towne Pub where he stayed until he called for a cab to pick him up at the Classic Rock Café. After appellant gave his statement, he was placed under arrest for Upton's murder.

{¶ 11} A videotape was obtained from the Classic Rock Café depicting appellant entering the bar on March 10, 2002, at 1:13 a.m. The video showed appellant wearing the black leather vest and white tennis shoes. Appellant's white tennis shoes were inspected and a spot of blood was found on the left shoe. The spot was subjected to DNA analysis which revealed that the spot contained a mixture of Upton's DNA profile and that of another person whose identity could not be determined. The black leather vest was inspected and bloodstains were found on the left side. The vest was subjected to DNA analysis and the blood matched Upton's DNA profile.

{¶ 12} On April 10, 2002, appellant was indicted for murder. The matter was tried before a jury on December 16 and 19, 2002. Appellant was found guilty of murder as charged in the indictment.

(Doc. 6, Exh. 7 at 1-5).

Petitioner was indicted by the April 2002 Term of the Butler County, Ohio Grand Jury on one count of Murder in violation of Ohio Rev. Code § 2903.02(B). (Doc. 6, Exh. 1). Petitioner entered a plea of not guilty and the case proceeded to jury trial. Petitioner was found guilty as charged in the indictment. (Doc. 6, Exh. 2). On December 23, 2002, petitioner was sentenced to fifteen years to life imprisonment. (Doc. 6, Exh. 3).

Petitioner, through counsel, filed a timely notice of appeal to the Twelfth District Court of Appeals. (Doc. 6, Exh. 4). On appeal, petitioner raised the following assignments of error:

1) The trial court erred to the prejudice of defendant-appellant when it permitted

Lisa Hyde to testify.

2) The trial court erred to the prejudice of defendant-appellant when it refused to provide instructions to the jury regarding lesser included offenses.

3)  The trial court erred to the prejudice of defendant-appellant when it allowed the State to engage in improper final arguments.

(Doc. 6, Exh. 5).  The State filed a response. (Doc. 6, Exh. 6).  On February 17, 2004, the Twelfth District Court of Appeals affirmed the judgment of the trial court. (Doc. 6, Exh. 7).

Petitioner failed to file a timely appeal to the Supreme Court of Ohio.  Instead, on April 20, 2004, petitioner filed a pro se notice of appeal and motion for delayed appeal. (Doc. 6, Exhs. 8, 9). The Supreme Court of Ohio granted the delayed appeal. (Doc. 6, Exh. 10).  Petitioner  raised the following propositions of law:

1)  The trial court erred to the prejudice of defendant-appellant when it permitted Lisa Hyde to testify.

2) The trial court erred to the prejudice of defendant-appellant when it refused to provide instructions to the jury regarding lesser included offenses.

3)  The trial court erred to the prejudice of defendant-appellant when it allowed the State to engage in improper final arguments.

(Doc. 6, Exh. 11).  The State filed a response. (Doc. 6, Exh. 12).  On October 13, 2004, the Supreme Court of Ohio denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 6, Exh. 13).

On November 30, 2005, petitioner filed a petition for writ of habeas corpus in this Court raising the following grounds for relief:

**Ground One**:  The trial court erred to the prejudice of defendant-appellant when it permitted Lisa Hyde to testify.

4

Supporting FACTS: It is improper to allow testimony that, 3 months before
a murder, the Def. made vague threats about the victim, when the victim was not
present for those threats and the person who heard them did not take them
seriously.  See attached p. 8-11 [referencing pages of petitioner's State appellate
brief].  This violates the defendant's Fifth, and Sixth and Fourteenth Amendments.

**Ground Two**:  The trial court erred to the prejudice of defendant-appellant when it
refused to provide instructions to the jury regarding lesser included offenses.

Supporting FACTS:  1st issue: When a Def. statement to police indicates
that he may have stabbed the victim in self-defense, it is erroneous to not instruct
the jury on self-defense: 2nd issue: When a Def. kills a victim in a fit of rage
because of serious provocation occasioned by the victim, it is erroneous to not
instruct the jury on the offense of voluntary manslaughter: 3rd issue: When there is
evidence that the Def.'s killing of another is not purposeful, but caused during the
commission of a felony, it is erroneous for the trial court to refuse to instruct the jury
on involuntary manslaughter.  See attached pages 11-17  [referencing pages of petitioner's
State appellate brief].  This violates the defendant's Fifth, Sixth [and] Fourteenth
Amendments.

**Ground Three**:  The trial court erred to the prejudice of defendant-appellant when it
allowed the State to engage in improper final arguments.

Supporting FACTS:  The Prosecutor is not permitted during final arguments to
appeal to the emotions of the jury and to convict based on fear by exhorting them
to not let the defendant get away with murder.  See attached pages 18-19  [referencing
pages of petitioner's State appellate brief].  This is a violation of the defendant's Fifth,
Sixth and Fourteenth Amendments.

(Doc. 1).

## II.  STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a

presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C.

§ 2254(e)(1).  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524,

530 (6th Cir. 2001).  This Court is bound by the state court adjudications unless those decisions are

contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144

F.3d 429, 433 (6th Cir. 1998).

5

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable . . . and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

Upon review of the entire record, this Court concludes that petitioner has failed to establish that the findings of the state appellate court are unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor*, 529 U.S. 362 (2000).

6

## III.  GROUND ONE OF THE PETITION IS WITHOUT MERIT.

Ground One of the petition asserts that the trial court erred when it permitted Lisa Hyde to testify about threatening statements made by petitioner three months before the murder.  Ms. Hyde testified that while she was having a conversation with petitioner at a bar, petitioner pulled out a knife and stated he did not have a problem cutting anyone.  When Ms. Hyde asked where Upton was, petitioner responded, "I'll cut her fucking head off."  Petitioner contends this testimony was too remote in time to be relevant and that the prejudicial impact of the testimony outweighed its probative value.  He contends the trial court's admission of this evidence violated Ohio Evid. Rule 403 and due process.  Respondent contends this ground for relief is not cognizable in federal habeas corpus because it involves an issue of state evidentiary law.

In addressing the merits of petitioner's claim, the Twelfth District Court of Appeals, the last state court to issue a reasoned opinion on the claim, found the following:

{¶ 15} Appellant argues that Hyde's testimony was "too remote in time to the events in question."  Furthermore, appellant argues that "the prejudicial impact of her testimony would outweigh any probative value."

{¶ 16} At trial, Hyde testified that approximately three months before the murder, she had a conversation with appellant at the Towne Pub.  During the conversation, appellant pulled out a knife and told Hyde that he would not have a problem with cutting anyone that fucked with him.  When Hyde asked appellant where Upton was, appellant replied that he would cut her fucking head off.

{¶ 17} Upon hearing Hyde's testimony, appellant's counsel objected and moved for a mistrial.  The trial court overruled the objection and the motion, stating that the testimony was material, relevant, and not remote because it demonstrated the lack of mistake.  Appellant argues the decision was erroneous.

{¶ 18} The trial court has "broad discretion in admission and exclusion of evidence and absent a clear abuse of discretion, a reviewing court will not disturb trial court's decision. State v. Combs (1991), 62 Ohio St.3d 278, 284.  A trial court does not abuse its discretion unless it acts arbitrarily, unreasonably, or unconscionably. State v. LaMar, 95 Ohio St.3d 181, 191, 2002-Ohio-2128, at ¶ 40.

7

{¶ 19} Evid. R. 404(B) states, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Threats made by an accused can constitute verbal acts in terms of Evid. R. 404(B).  See State v. Kuhn (Aug. 23, 1993), Clermont App. No. CA93-01-007.  Pursuant to Evid. R. 404(B), prior threats to commit a criminal act are admissible where they are directly related to proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, and are close in time to the criminal act in question. State v. Sargent (1998), 126 Ohio App.3d 557, 568.

{¶ 20} Hyde's testimony indicates that appellant's statements consisting of threats to cut anyone that fucked with him and to cut Upton's head off were specifically directed toward Upton and occurred only a few months prior to Upton being found dead as a result of a stabbing.  Appellant's statements were not too distant in time as to have no probative value because the statements reflected the type of conduct with which appellant was charged.  Appellant's statements were also probative of whether the stabbing was accidental.  Therefore, the trial court could have reasonably concluded that the statements were admissible pursuant to Evid. R. 404(B).

{¶ 21} The trial court's decision to admit the evidence was not arbitrary, unreasonable, or unconscionable.  Accordingly, appellant's first assignment of error is overruled.

(Doc. 6, Exh. 7 at 6-8).

Petitioner has failed to show that the state court of appeals' decision is contrary to, or an unreasonable application of, clearly established federal law.  "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), *cert. denied*, 543 U.S. 892 (2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991); *see also Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (stating in reference to habeas corpus challenge to admission of other-acts evidence that "[s]tate court evidentiary rulings do not rise to the level of due process violations unless they offend some principle

8

of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.")

(internal quotation marks and citations omitted); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.

2000), *cert. denied*, 532 U.S. 989 (2001) ("Errors in the application of state law, especially rulings

regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas

corpus proceeding.") (internal quotation marks and citation omitted).

With respect to the admission of prior bad acts evidence, the Sixth Circuit has found that there

is no clearly established United States Supreme Court precedent holding that the admission of such

evidence violates the Due Process Clause:

> There is no clearly established Supreme Court precedent which holds that a state
> violates due process by permitting propensity evidence in the form of other bad acts
> evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the
> admission of prior injury evidence violated due process, thus warranting habeas relief.
> 502 U.S. 62, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court stated in a
> footnote that, because it need not reach the issue, it expressed no opinion as to whether
> a state law would violate due process if it permitted the use of prior crimes evidence to
> show propensity to commit a charged crime. *Id*. at 75 n. 5, 112 S.Ct. 475. Moreover,
> in *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme
> Court rejected the argument that the Due Process Clause requires the exclusion of
> prejudicial evidence, even though limiting instructions were given and a valid state
> purpose is served. *Id*. at 563-64, 87 S.Ct. 648. The Court recognized that it was not "a
> rule-making organ for the promulgation of state rules of criminal procedure. And
> none of the specific provisions of the Constitution ordains this Court with such
> authority." *Id*. at 564, 87 S.Ct. 648. While the Supreme Court has addressed whether
> prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief
> v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v.
> United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not
> explicitly addressed the issue in constitutional terms. Accordingly, the district court
> correctly found that there is no Supreme Court precedent that the trial court's decision
> could be deemed "contrary to," under AEDPA.

*Bugh v. Mitchell*, 329 F.3d 496, 512-513 (6th Cir. 2003).

Thus, under *Bugh*, even if the prior acts evidence to which petitioner objects was improperly

admitted by the trial court, there is no clearly established Supreme Court precedent which holds that

the admission of such propensity evidence violates the Due Process Clause.  "The Supreme Court has not made a contrary ruling since *Bugh* and the holding that there is no 'clearly established' due process right against the use of propensity evidence is binding in this Circuit until either the Supreme Court or Sixth Circuit says otherwise." *Sifuentes v. Prelesnik*, 2006 WL 2347529, *1 (W.D. Mich. Aug. 11, 2006); s*ee also Doan v. Voorhies*, 2007 WL 894559, *18 (S.D. Ohio March 21, 2007).

Accordingly, the Ohio Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law.  Therefore, petitioner is entitled to no habeas relief due to the allegedly erroneous evidentiary ruling.

## IV.  GROUND TWO OF THE PETITION IS WITHOUT MERIT.

Petitioner's Second Ground for relief asserts that the trial court erred when it refused to provide instructions to the jury regarding lesser included offenses, including instructions on self-defense, voluntary manslaughter, and involuntary manslaughter.  Petitioner argues that the evidence at trial justified an instruction on self-defense[2] based on petitioner's version of events, which the jury was free to believe or disbelieve.  In this regard, petitioner cites to evidence of his statement to the police:  that Upton began arguing with petitioner in the automobile, began to hit him, and pulled a

---

[2]  Under Ohio law, a defendant must prove the following elements to establish self-defense: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger. *State v. Barnes,* 94 Ohio St.3d 21, 24, 759 N.E.2d 1240, 1244 (2002) (citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus (1979)).

knife on him.  Accordingly to petitioner, he had to grab Upton's hand and force it away from his own body to protect and save himself and in doing so may have accidentally cut Upton.  At this point, petitioner left the automobile so he did not know to what extent he may have hurt Upton.

With respect to his claim that the trial erred by not instructing the jury on voluntary manslaughter,[3] petitioner contends the evidence showed that he and Upton had been arguing on and off all day; she was quite intoxicated; she began to hit him; she pulled out a knife and held it to his face; and it was only because of these actions that petitioner may have ended up hurting or killing Upton.  Petitioner contends this was sufficient evidence of provocation warranting an instruction on the lesser included offense of voluntary manslaughter.

Petitioner further contends that the evidence at trial showed the killing of Upton was not purposeful, justifying an involuntary manslaughter[4] instruction.  He states the evidence showed he consistently denied any intention to kill Upton:  he told this to his mother, he told this to Detective Rogers, and he stated this in a letter (State's Exhibit 2).  While the jury was free to disbelieve these assertions, it could have decided they were credible.  He contends that since reasonable minds could differ as to his purpose in killing Upton, the jury should have been instructed on involuntary manslaughter. (Doc. 1, brief at 16).

In addressing these assignments of error, the Twelfth District Court of Appeals found as

---

[3]  Ohio's voluntary manslaughter statute states:

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.

Ohio Rev. Code § 2903.03(A).

[4]  Ohio's involuntary manslaughter statute states:

(A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.

Ohio Rev. Code § 2903.04(A).

follows:

{¶ 23} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO PROVIDE INSTRUCTIONS TO THE JURY REGARDING LESSER INCLUDED OFFENSES."

{¶ 24} Appellant maintains that his second statement to the police indicated that he might have stabbed the victim in self-defense.  Therefore, appellant argues "it is erroneous to not instruct the jury on self-defense."

{¶ 25} The Ohio Supreme Court in State v. Williford (1990), 49 Ohio St.3d 247, set forth the law relating to self-defense.  Under Ohio Law, self-defense is an affirmative defense. State v. Martin (1986), 21 Ohio St.3d 91.  To establish self-defense, the defendant must show " * * *(1) [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger." Williford, 49 Ohio St.3d at 249; State v. Robbins (1979), 58 Ohio St.2d 74, syllabus.  The defendant is privileged to use that force which is reasonably necessary to repel the attack. State v. McLeod (1948), 82 Ohio App. 155, 157.  If the defendant "fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." State v. Jackson (1986), 22 Ohio St.3d 281, 284.

{¶ 26} A trial court does not err in failing to instruct the jury on self-defense where the evidence is insufficient to support the instruction. State v. Palmer, 80 Ohio St.3d 543, 1997-Ohio-312.  In determining whether a defendant has introduced sufficient evidence to successfully raise the affirmative defense of self-defense, a reviewing court must evaluate the evidence, "which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." R.C. 2901.05; State v. Melchior (1978), 56 Ohio St.2d 15.

{¶ 27} The evidence establishes that Upton was stabbed in the chest five times.  Appellant maintains that while he was arguing with Upton in her vehicle, she hit him with her fists.  He hit her back so she pulled out a knife, waved it in his face, and attempted to stab him.  He grabbed her hand and pushed it down to keep the knife away from him.  Appellant maintains that the knife could have possibly cut her at that time.

{¶ 28} A defendant is privileged to use that force which is reasonably necessary to repel the attack.  However, even if appellant's version is believed, he has not demonstrated that the force reasonably necessary to repel Upton's alleged attack required stabbing her five times in the chest.  Appellant has not established that such force was his only means of escape when he had the ability to simply exit Upton's vehicle when she pulled out a knife.

12

{¶ 29} Consequently, appellant has failed to demonstrate that he acted in self-defense. See Jackson, 22 Ohio St.3d at 284. Accordingly, we conclude that the trial court did not abuse its discretion in failing to instruct the jury on self-defense.

{¶ 30} Appellant also argues that "when a defendant kills a victim in a fit of rage because of serious provocation occasioned by the victim, it is erroneous to not instruct the jury on the offense of voluntary manslaughter."

{¶ 31} Voluntary manslaughter is an inferior degree of murder, for "its elements are * * * contained within the indicted offense, except for one or more additional mitigating elements * * * ." State v. Shane (1992), 63 Ohio St.3d 630, 632. Even though voluntary manslaughter is not a lesser included offense of murder, the test for whether a judge should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser included offense is sought. Id. at 37.

{¶ 32} The trial court should give an instruction on a lesser included offense only when the evidence warrants it. State v. Johnson (1988), 36 Ohio St.3d 224, 226. The trial court must charge the jury on a lesser included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988), 40 Ohio St.3d 213, at paragraph 2 of the syllabus.

{¶ 33} For example, a trial court will give an instruction on the inferior degree offense of voluntary manslaughter in a murder trial only when the jury could reasonably find against the state on the element of purposefulness and still find for the state on the defendant's act of killing another. See id. However, an instruction is not warranted every time "some evidence" is presented on a lesser included or inferior degree offense. Shane, 63 Ohio St.3d at 632-33.

{¶ 34} R.C. 2903.03 sets forth, in pertinent part, "No person, while under the influence of sudden passion or in a sudden rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall cause the death of another." Before giving a voluntary manslaughter instruction in a murder case, the trial court must determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." Shane, 63 Ohio St.3d at 635. For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Id; State v. Braden, 98 Ohio St.3d 354, 2003-Ohio-1325.

{¶ 35} In the instant case, appellant contends his assertion that he and Upton "had been arguing on and off all day," that Upton "was quite intoxicated," that she "began to hit him," and that she "pulled a knife out and held it to his face" forms the basis for an instruction on the lesser charge of voluntary manslaughter.

13

{¶ 36} However, if insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction. Shane, at 634. To determine whether the provocation was reasonably sufficient to incite the use of deadly force, "the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." State v. Deem (1988), 40 Ohio St.3d 205, 211, quoting State v.. Mabry (1982), 5 Ohio App.3d 13, paragraph five of the syllabus.

{¶ 37} We decline to hold that appellant's assertions that the victim "had been arguing" with him, she "was quite intoxicated," she "began to hit him," and that she "pulled a knife out" on him would have been sufficient to arouse the passions of an ordinary person beyond control. Considering appellant's emotional and mental state, and the conditions and circumstances that surrounded appellant at the time, the record lacks sufficient evidence of serious provocation.

{¶ 38} The evidence revealed that Upton wanted to end her relationship with appellant. Upton moved out of appellant's residence. The day Upton moved out, Skinner testified that appellant stated, "as soon as I find the bitch, I'm going to kill her." Furthermore, Hyde testified that months before Upton's death, appellant stated he would "cut [Upton's] fucking head off."

{¶ 39} The evidence reveals that the stabbing was not influenced by a sudden passion or a sudden rage brought on by serious provocation from the victim. Accordingly, we find no error in the trial court's denial of the requested voluntary manslaughter jury instruction.

{¶ 40} Appellant also argues that "when there is evidence that the defendant's killing of another is not purposeful, but caused during the commission of a felony, it is erroneous for the trial court to refuse to instruct the jury on involuntary manslaughter."

{¶ 41} The Ohio Supreme Court has held that involuntary manslaughter is a lesser included offense of murder. See State v. Thomas (1988), 40 Ohio St.3d 213, 215, certiorari denied (1989), 493 U.S. 826, 110 S.Ct. 89. Once a lesser included offense is identified, the court must then examine the facts and decide whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater. State v. Kidder (1987), 32 Ohio St.3d 279, 280.

{¶ 42} Even though involuntary manslaughter is a lesser included offense of murder, a criminal defendant is only entitled to such an instruction when the evidence warrants it. Id. That is, "a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." Thomas, 40 Ohio St.3d at 216. In making this determination, "the court must view the evidence in the light most

14

favorable to the defendant." <u>State v. Smith</u>, 89 Ohio St.3d 323, 331, 2000-Ohio-166, citing <u>State v. Wilkins</u> (1980), 64 Ohio St.2d 382, 388.  However, "some evidence" for the lesser charge is not determinative; there must be sufficient evidence for the jury to reasonably reject the greater offense. <u>State v. Shane</u>, 63 Ohio St.3d at 632-33.

{¶ 43} R.C. 2903.04(A) provides: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Appellant contends that he should have received an involuntary manslaughter instruction with felonious assault as the underlying felony.  R.C. 2903.11(A) states: "No person, shall knowingly do either of the following: (1) Cause serious physical harm to another * * *; (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *."

{¶ 44} In this case, the trial court properly exercised its discretion in concluding that no jury could reasonably conclude that the evidence in this case supports an acquittal on the murder charge and a conviction for involuntary manslaughter, with felonious assault as the underlying felony.

{¶ 45} The physical evidence of the crime scene and the autopsy of the victim reveal that Upton was stabbed in the chest five times.  However, it is appellant's contention that he might have accidentally cut the victim while attempting to keep her from stabbing him during a fight.

{¶ 46} The coroner testified that the knife found on the scene, "consistent with the murder weapon," had a blade length of "three-and-a half inches."  However, the fatal wound was four inches deep.  The coroner testified that the extra "distance of one-half inch indicates that there has been some force applied."  The coroner explained that "the body is compressible" and that allowed the knife to enter Upton's body an extra "one-half inch."

{¶ 47} The coroner noted that enough force was applied to leave a hilt mark around the wound.  The coroner also noted that Upton did not appear to have been resisting in a fight because there were no defensive wounds on her hands.  Additionally, Upton's fingerprints were not found on the knife found on the scene and identified as "consistent with the murder weapon."  No identifiable prints were found on the knife.

{¶ 48} Appellant was videotaped the night of Upton's death wearing a black leather vest and white tennis shoes.  Blood stains consistent with Upton's DNA were found on the left tennis shoe and the leather vest.

{¶ 49} This Court cannot conclude that the trial court abused its discretion in finding that a jury could not reasonably find appellant innocent of murder and guilty of involuntary manslaughter.  The trial court properly determined that evidence presented does not reasonably support both an acquittal on the murder charge and an involuntary manslaughter conviction.  Therefore, the trial court did not err in denying the involuntary manslaughter instruction request.  Consequently, appellant's second

assignment of error is overruled.

(Doc. 6, Exh. 7 at 8-16).

To the extent petitioner claims he is entitled to relief because the trial court committed error or otherwise abused its discretion under state law governing the giving of lesser-included offense instructions, he raises issues of state law only that are not cognizable in this federal habeas corpus proceeding.  A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.), *cert. denied,* 488 U.S. 866 (1988); *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied,* 488 U.S. 1011 (1989).

Turning to the constitutional issue, the United States Supreme Court held in *Beck v. Alabama,* 447 U.S. 625 (1980), that a defendant in a capital murder case has a constitutional right to have the jury instructed on a lesser included offense in certain situations. *Beck,* 447 U.S. at 638.  When a jury is given only two options, "not guilty" and "guilty of capital murder," the risk that the jury will convict when it has reasonable doubt is too great; therefore, in that limited context, a lesser included non-capital offense instruction is required when there is evidence to support it. *Id.*  The Court in *Beck* expressly declined to decide "whether the Due Process Clause would require the giving of such instruction in a non-capital case." *Id.* at 638 n.7.  To date, the Supreme Court has not held that due process requires the giving of a lesser included offense instruction in a non-capital case.  *See Scott v. Elo,* 302 F.3d 598, 606 (6th Cir. 2002), *cert. denied,* 123 S.Ct. 1272 (2003).  The United States Court of Appeals for the Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th

16

Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc)); *see also Scott*, 302 F.3d at 606.

In *Bagby*, the Sixth Circuit refused to extend *Beck* to the non-capital context on federal habeas corpus review of a state conviction, reasoning as follows:

> It appears to us that the Supreme Court's opinion in *Beck* is grounded upon Eighth Amendment concerns, rather than those arising from the Due Process Clause of the Fourteenth Amendment. If we are correct in that assessment, then we are not required to extend *Beck* to noncapital cases. Instead, we must determine whether the error asserted by Bagby is of the character or magnitude which should be cognizable on collateral attack. Is the failure to instruct on lesser included offenses in noncapital cases such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with rudimentary demands of fair procedure? . . . Experience tells us that it is not.
>
> Our view, that it is not an error of such character and magnitude to be cognizable in federal habeas corpus review, is shared by a majority of the circuits. . . .

*Bagby,* 894 F.2d at 796-97 (citations omitted). The court postulated it was "conceivable" that claims such as petitioner's might be cognizable on federal habeas review where "a fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state law." *Id.* at 795. The court emphasized, however, such occasions would occur only in the "most unusual circumstances," such as where the failure to give the instruction likely resulted in the conviction of an innocent person, because "it is not the function of a federal habeas court to correct errors in state law." *Id.*; *see also Todd v. Stegal,* 40 Fed. Appx. 25, 28 (6th Cir. Apr. 12, 2002), *cert. denied,* 537 U.S. 981 (2002).

Here, petitioner has not shown that this case involves "most unusual circumstances" where a fundamental miscarriage of justice has resulted from the arbitrary and unsupportable refusal of the trial court to give a lesser-included offense instructions in clear defiance of state law. In this case, the Ohio Court of Appeals upheld the trial court's determination that the evidence at trial did not support

17

jury instructions on self-defense, voluntary manslaughter, or involuntary manslaughter.  Where a state court has reviewed a habeas petitioner's request for a lesser included offense instruction and concludes that it was not warranted by the evidence presented at trial, "that conclusion is axiomatically correct, as a matter of state law." *Bagby v. Sowders,* 894 F.2d at 795.  As the Ohio Court of Appeals explained, petitioner failed to show that the force reasonably necessary to repel Upton's alleged attack required him to stab her five times in chest, or that such force was his only means of escape when he could have simply exited the automobile when Upton pulled out a knife.  Thus, there was no justification for the self-defense instruction.

The Court of Appeals also found that the evidence that petitioner and Upton had been arguing, that Upton was "quite intoxicated," that she began to hit him, and that she pulled out a knife on him was not sufficient to arouse the passions of an ordinary person beyond control.  This finding was reasonable, especially in view of the evidence that Upton wanted to end her relationship with petitioner, that Upton had moved out of petitioner's residence, and Jeff Skinner's testimony that petitioner stated, "as soon as I find the bitch, I'm going to kill her."  Thus, the evidence failed to show the stabbing was influenced by a sudden passion or rage brought on by serious provocation by Upton to justify an instruction on voluntary manslaughter.

Finally, as the Court of Appeals determined, the evidence did not reasonably support both an acquittal on the murder charge and a conviction on an involuntary manslaughter charge to warrant an involuntary manslaughter instruction.  This included the physical evidence of the crime scene, the autopsy evidence showing Upton was stabbed in the chest five times, the coroner's testimony concerning the depth of the wound and the force used, the absence of defensive wounds on Upton's hands, the absence of Upton's fingerprints or any identifiable prints on the knife, and the DNA evidence showing blood stains on petitioner's clothing consistent with Upton's DNA.  In light of this

evidence, the refusal to give an instruction on involuntary manslaughter cannot be said to be arbitrary.

Under the foregoing facts, the Court cannot conclude that the trial court's determination that the evidence was insufficient to support instructions on self-defense, voluntary manslaughter, or involuntary manslaughter was arbitrary and unsupportable and in clear defiance of state law. *See Bagby*, 894 F.2d at 795. This is not the unusual case contemplated by *Bagby* where a failure to give a lesser included offense instruction amounted to a fundamental miscarriage of justice that was likely to have resulted in the conviction of an innocent person. *See Bagby,* 894 F.2d at 795; *see also Scott,* 302 F.3d at 606. Therefore, petitioner is not entitled to habeas corpus relief based on the trial court's failure to instruct the jury on self-defense or on the lesser-included offenses of voluntary manslaughter and involuntary manslaughter.

## V.  GROUND THREE OF THE PETITION IS WITHOUT MERIT.

Petitioner's Third Ground for relief asserts his right to due process was violated when the prosecution engaged in misconduct during closing arguments. Petitioner contends that during his final argument, the prosecutor appealed to the emotions of the jury by exhorting them to not let petitioner "get away with murder." (Tr. 651). The trial court overruled defense counsel's objection to the comment, request for a mistrial, and request for a curative instruction. Petitioner claims this prosecutorial misconduct denied him a fair trial and due process of law.

In addressing this claim of error, the Ohio Court of Appeals found as follows:

{¶ 52} Appellant argues that the "prosecutor is not permitted during final arguments to appeal to the emotions of the jury and to convict based upon fear by exhorting them to not let the defendant get away with murder."

{¶ 53} At the end of closing arguments, the prosecutor stated, "when you leave and those hallways are quiet, please let the air be filled with truth and justice.  Please don't let this man get away with murder."  Appellant's counsel objected to the comment and moved for a mistrial.  The trial court overruled the objection and the motion.  Appellant maintains that the rulings were erroneous.

{¶ 54} A prosecutor is entitled to a certain degree of latitude in closing arguments.  State v. Liberatore (1982), 69 Ohio St.2d 583, 589.  Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments.  State v. Maurer (1984), 15 Ohio St.3d 239, 269.  A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty.  State v. Benge, 75 Ohio St.3d 136, 141, 1996-Ohio-227.

{¶ 55} While we do not condone the prosecutor's comment, we believe that the jury would have nonetheless convicted appellant absent the prosecutor's comment.  Accordingly, appellant's third assignment of error is overruled.

(Doc. 6, Exh. 7 at 16-17).

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986).  The reviewing court's focus in a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).  A prosecutor's alleged misconduct must be examined within the context of the entire trial to determine whether it deprived a defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985).  "Reversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell*,

20

440 F.3d 754, 778 (6th Cir. 2006)(quoting *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997)).

The Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights.  *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452.  Upon a finding of impropriety, the court then determines if the statements were flagrant. *Id*.  The court considers four factors in determining flagrancy: (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant. *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003); *Macias*, 291 F.3d at 452.; s*ee also Darden,* 477 U.S. at 182; *Young,* 470 U.S. at 12; *Donnelly*, 416 U.S. at 646-647.  Other relevant factors include whether the prosecutor manipulated or misstated the evidence, *see Darden,* 477 U.S. at 182; *Berger v. United States,* 295 U.S. 78, 84-85 (1935), *overruled on other grounds by Stirone v. United States,* 361 U.S. 212 (1960), or whether a curative instruction was given by the trial judge, *see Darden,* 477 U.S. at 182.

In the instant case, the Ohio Court of Appeals did not explicitly find that the prosecutor's conduct in closing argument amounted to prosecutorial misconduct, but stated only that the comment was "not condoned." (Doc. 6, Exh. 7 at 17).  However, the court of appeals determined that even in the absence of the comment the jury would have returned a guilty verdict. *Id*.

For purposes of the instant habeas corpus petition, the Court will assume the prosecutor's comment during closing argument was improper. *Macias*, 291 F.3d at 452.  Nevertheless, the Court finds the single comment was not so flagrant as to render petitioner's entire trial fundamentally

unfair.        In the context of the entire trial, the prosecutor's comment was not so extensive so as to prejudice petitioner.  The prosecutor's comment occurred during closing argument, and petitioner does not contend that the prosecutor made any other inappropriate comments or statements at any other point during the trial.  Nor has petitioner presented evidence that the prosecutor manipulated or misstated the evidence. *Darden,* 477 U.S. at 182.  Because the comment was made one time and was isolated, this factor does not weigh in petitioner's favor. *Bowling*, 344 F.3d at  512.

In addition, the trial court instructed the jury as to the burden of proof, that the arguments of the lawyers were not evidence, and that the jury was the sole judge of the evidence. (Tr. 652-53, 654, 655, 662-663).  The jury is presumed to follow the instructions of the court absent an "overwhelming probability" the jury will be unable to follow the instruction. *Greer v. Miller*, 483 U.S. 756, 767 n. 8 (1987); *United States v. Ford*, 872 F.2d 1231, 1239 (6th Cir.1989).

Also, petitioner failed to present any evidence suggesting that the prosecutor intentionally made any improper statements.  Because there is no evidence of intent in the record, the third *Bowling* factor does not help petitioner establish flagrancy.

Finally, the strength of the circumstantial evidence against petitioner supports a finding that the prosecutor's alleged misconduct did not affect the outcome of the trial.  It is highly unlikely that the jury would have been misled by a single comment to not let petitioner "get away with murder" and convict petitioner without finding that the State had met its burden of proving each element of the offense beyond a reasonable doubt.

In this Court's review of the habeas corpus petition, "the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly

established federal law." *Macias*, 291 F.3d at 454 (citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 411 (2000)).  The relevant factors discussed above weigh against a finding of flagrancy,  and the Ohio Court of Appeals' determination that the jury would have nonetheless convicted petitioner even absent the prosecutor's comment was not objectively unreasonable. Petitioner has failed to demonstrate the prosecutor's challenged statement in closing argument deprived him of a fair trial.  Accordingly, petitioner is not entitled to habeas corpus relief based on the prosecutorial misconduct claim alleged in Ground Three of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2.  A certificate of appealability should not issue with respect to the claims alleged in Grounds One, Two, or Three of the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner

leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R.

App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: 7/6/2007                                      s/Timothy S. Black
                                                    Timothy S. Black

                                                    United States Magistrate Judge

24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL RICE,                                    Civil Action No. 1:05-cv-779
       Petitioner,

                                  Spiegel, J.
       vs.                                          Black, M.J.

ERNIE MOORE, WARDEN,
       Respondent.

**NOTICE**

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

25